**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

HUTTON & HUTTON LAW FIRM, L.L.C.,  )
                                   )
            Plaintiff,             )
                                   )
     v.                            )     Case No.13-1115-RDR
                                   )
GIRARDI & KEESE; THOMAS V. GIRARDI )
                                   )
            Defendants.            )


**MEMORANDUM AND ORDER**

In this case, a Kansas law firm, Hutton & Hutton Law Firm, L.L.C. (the Hutton firm), has sued a California law firm, Girardi & Keese (G & K), and one of its attorneys, Thomas V. Girardi, seeking attorneys' fees. This matter is presently before the court upon defendants' motion to dismiss for lack of personal jurisdiction. In the alternative, defendants have asked the court to transfer this case pursuant to 28 U.S.C. § 1404(a)and 28 U.S.C. § 1631 to the United States District Court for Central District of California. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

This action was originally filed in Kansas state court. It was removed to this court based upon diversity jurisdiction on March 22, 2013. The complaint contains four counts. In the first two counts, the Hutton firm asserts claims of breach of

1

contract and conversion against the defendants arising from the settlement of Celebrex/Bextra cases. In the next two counts, the Hutton firm asserts claims of breach of contract and conversion against the defendants arising from the settlement of Zimmer Durom Cup litigation. In each instance, the Hutton firm had clients with claims based upon the use of Celebrex/Bextra and the use of the Zimmer Durom Cup. The Hutton firm contends that it entered into an agreement with G & K to refer its cases to G & K for settlement.

I.

The complaint and the record before the court, when viewed in the light most favorable to the plaintiff, show the following facts. The Hutton firm is located in Wichita, Kansas. G & K is a California law firm that "represents clients in California and nationwide in cases involving personal injury, medical malpractice, wrongful death, product defects, employment law, aviation law and others." (G & K Website Homepage). Girardi is a founding and managing partner of G & K.

G & K has no offices or employees in Kansas. It owns no property in Kansas. It has no registered agent for service in Kansas. Girardi lives in Pasadena, California. He has never lived or owned property in Kansas. He has never traveled to Kansas for any reason that is related to the Celebrex/Bextra

litigation or the Zimmer Durom Cup litigation.

The Hutton firm represented various individuals with product liability claims against Pfizer, Inc. arising out of the manufacture of the prescription drugs Celebrex and Bextra. These clients claimed they had suffered personal injuries from the ingestion of Celebrex and Bextra. The Hutton firm filed suit on behalf of the clients against Pfizer. Fifteen of those clients were Kansas residents. During the same time period, many claims and lawsuits were asserted against Pfizer across the nation, resulting in a multi-district litigation proceeding in the United States District Court for the Northern District of California known as In re Bextra and Celebrex Marketing Sales Practice and Product Liability Litigation, MDL No. 05-1699. Hutton's suits were either directly filed in, or transferred to, that court.

In 2008 and 2009, G & K directed and spearheaded an effort to unite the firms representing claimants in the Celebrex/Bextra litigation in order to negotiate an aggregate settlement for all claimants. Anne Andrews, an attorney with the California law firm of Andrews & Thornton, contacted the Hutton firm in Wichita and requested that the Hutton firm refer all of its Celebrex/Bextra cases to G & K and Andrews & Thornton. The purpose of the referral was to allow G & K to negotiate

settlements for the Hutton firm's clients in the Bextra and Celebrex litigation. On May 29, 2009, Girardi sent a letter to Mark Hutton soliciting the Celebrex/Bextra cases. The letter stated:

> Dear Mark:
>     Can you send me a list of your cases so I can get a first-cut look? More importantly, I look forward to a long and great relationship.

The Hutton firm agreed to refer its cases to G & K. The firms agreed to split the fees in the following manner if a settlement was reached: 80% to the Hutton firm, 10% to Andrews & Thornton, and 10% to G & K.

Thereafter, the Hutton firm prepared "voluminous information and records" for its clients' cases at its office in Kansas. In October 2009, G & K entered into a confidential settlement with Pfizer, which resolved all of the Hutton firm's clients' cases. In order to disburse the clients' share of the settlement proceeds, G & K, with one exception, made payment from its trust account and sent the clients' checks to the Hutton firm in Kansas, and the Hutton firm forwarded individual checks to the clients. Girardi sent Mark Hutton a letter on March 7, 2011 confirming the fee arrangement: "We will live up to the agreement." G & K has remitted four checks to the Hutton firm in Kansas as partial payment under the parties's fee-sharing

agreement.  The Hutton firm contends in this case that G & K has not paid the total amount due under the agreement.

Similar facts are present concerning the Zimmer Durom Cup litigation.  In November 2008, Scott Cox, a Kansas resident, retained the Hutton firm to represent him in connection with a products liability claims arising from the implantation of the Zimmer Durom Cup, manufactured by Zimmer, Inc.  In late spring or early summer 2009, Girardi informed Mark Hutton during several telephone conversations that his firm was representing several clients with claims against Zimmer and told him that his firm could procure larger settlements for the clients.  Girardi solicited the Hutton firm to refer its case to G & K.  Shortly thereafter, G & K and the Hutton firm agreed to refer the case to G & K in an attempt to obtain a settlement of Cox's case. They agreed that Hutton would receive two-thirds of the net attorneys' fees and G & K would receive one-third.  The Hutton firm assembled information and records and sent them to G & K. In December 2011, Cox entered into a confidential settlement agreement with Zimmer.  On or about March 19, 2012, Cox received a check from G & K as partial payment for his settlement. The Hutton firm asserts that it has not received any amount of the attorneys' fees owed to them by G & K for this litigation.

During the same period in late spring and early summer

2009, G & K also solicited products liability cases from the Hutton firm involving claims against the manufacturer Avandia. The Hutton firm agreed to refer its Avandia cases to G & K, of which 19 involved Kansas residents. Again, the Hutton firm performed substantial work on the Avandia cases by assembling information to be sent to G & K.

From 2009 to the present, the Hutton firm has received 77 letters, e-mails and faxes from Girardi and/or G & K regarding the Celebrex/Bextra, Zimmer and Avandia litigation. Sixty-five of these communications related to the Celebrex/Bextra and Zimmer litigation. The remaining 12 letters, e-mails and faxes related to the Avandia cases. Most of those communications originated from the lead day-to-day attorneys on the Celebrex/Bextra cases, either Andre Sherman or David Bigelow.

## II.

The standard that governs a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) is well established. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Edison Trust Number One v. Pattillo, 2010 WL 5093831 at *1 (D.Kan. Dec. 8, 2010). The extent of the burden depends on the stage at which the court considers the jurisdictional issue. Id. When personal jurisdiction "is decided at a preliminary stage by reference to

only the complaint and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction." <u>Id</u>.

"The plaintiff may carry this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" <u>Id</u>. (quoting <u>TH Agric. & Nutrition, L.L.C. v. Ace European Grp. Ltd.</u>, 488 F.3d 1282, 1286 (10th Cir. 2007)). In determining if it has personal jurisdiction over a defendant, the court may consider affidavits and other documentary evidence submitted by the parties. <u>TH Agric. & Nutrition</u>, 488 F.3d at 1286. To the extent allegations in the complaint are uncontroverted, the court must accept those allegations. <u>Wenz v. Memery Crystal</u>, 55 F.3d 1503, 1505 (10th Cir. 1995). If the jurisdictional allegations are challenged, however, the plaintiff has a duty to support its jurisdictional allegations by competent proof of supporting facts. <u>Payless Shoesource, Inc. v. Shops at Hancock, LLC</u>, 2012 WL 1344977 at * 1 (D.Kan. Apr. 18, 2012)(citing <u>Pytlik v. Prof'l Res., Ltd.</u>, 887 F.2d 1371, 1376 (10th Cir. 1989)). Factual disputes are resolved in plaintiff's favor. <u>Id</u>.

In a federal diversity case, the law of the forum state determines the court's jurisdiction over defendants. Fed.R.Civ.P. 4(e); <u>Marcus Food Co. v. DiPanfilo</u>, 671 F.3d 1159, 1166 (10th Cir. 2011). To establish jurisdiction, plaintiffs must show two

things: first, that the Kansas long-arm statute contemplates the exercise of jurisdiction, and second, that jurisdiction comports with the due process requirements of the Fourteenth Amendment. Marcus Food Co., 671 F.3d at 1166. The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process, which means that the court need not conduct a statutory analysis apart from the due process analysis. Id.; Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1159 (10th Cir. 2010).

The due process analysis consists of two steps: (1) whether the defendant has such minimum contacts with the forum state that it should reasonably anticipate being haled into court there; and (2) if the defendant has minimum contacts with the forum state, whether exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice. AST Sports Sci., Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1061 (10th Cir. 2008).

Minimum contacts can be established by either general jurisdiction or specific jurisdiction. The Hutton firm has suggested that personal jurisdiction over the defendants can be established under both general jurisdiction and specific jurisdiction.

A.

General jurisdiction arises when a defendant's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against defendant on causes of action arising from dealings entirely distinct from those activities. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2854 (2011). General jurisdiction requires that the defendant have contacts with the forum "so continuous and systematic as to render [it] essentially at home in the forum state." Fireman's Fund Ins. Co. v. Thyssen Min. Const. Of Canada, Ltd., 703 F.3d 488, 493(10th Cir. 2012)(quoting Goodyear Dunlop, 131 S.Ct. at 2851); Shrader v. Biddinger, 633 F.3d 1235, 1243(10th Cir. 2011)("commercial contacts here must be of a sort that approximate physical presence in the state" (quotations omitted)). "The Supreme Court has established [general jurisdiction] as being a high threshold." Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1543 (10th Cir. 1996)(citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-17 (1984)). However, the Supreme Court has not outlined a specific test to follow in determining whether a defendant's activities in the forum state reach the level of "continuous and systematic." Rather, the Court looks to the facts of each case in making such a determination.

Recently, in <u>Monge v. RG Petro-Machinery (Group) Co. Ltd.</u>, 701 F.3d 598, 614-615 (10th Cir. 2012), the Tenth Circuit, summarized several cases where general jurisdiction was found lacking:

> For example, in <u>Helicopteros</u>, a Colombian company had spent more than $4 million to purchase 80 percent of its helicopters, spare parts, and accessories from Texas sources from 1970-77. 466 U.S. at 411, 418, 104 S.Ct. 1868. The company had sent its pilots, management, and maintenance personnel to be trained in Texas during the same period. <u>Id</u>. The Supreme Court concluded that the Texas courts lacked general jurisdiction over the company despite these numerous contacts with Texas. <u>Id</u>. In <u>Benton</u> [<u>v. Cameco Corp.</u>, 375 F.2d 1070(10th Cir. 2004)], we concluded that "two dozen transactions taking place over a period of eight years ... is not sufficient to meet the high burden of demonstrating ... 'continuous and systematic general *615 business contacts.'" 375 F.3d at 1080. And in <u>Shrader</u>, we said that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." 633 F.3d at 1243 (quotations omitted).

The Tenth Circuit has established four factors to consider in deciding whether general jurisdiction has been established:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

<u>Kuenzle v. HTM Sport-Und Freizeitgeräte AG</u>, 102 F.3d 453, 457 (10th Cir. 1996)(quoting <u>Trierweiler</u>, 90 F.3d at 1533)(internal quotation marks omitted); <u>see</u> <u>Doering v. Copper Mountain, Inc.</u>,

259 F.3d 1202, 1210 (10th Cir. 2001).

The court notes that the Hutton firm has made what can only be described as a half-hearted effort at demonstrating that this court has general jurisdiction over the defendants. In support of this contention, the Hutton firm points to the following: (1) the agreements and contacts made by G & K and Girardi with them concerning the litigation that led to the filing of this case, i.e., the Celebrex/Bextra cases and Durom Cup litigation; (2) the agreement and contacts made by G & K and Girardi with them concerning the Avandia litigation; (3) the representation by G & K and Girardi of the plaintiffs in In re Motor Fuel Temperature Sales Practice Litigation, MDL No. 07-1840 (D.Kan.) from 2007 to the present including at least one appearance in Kansas; (4) the representation by G & K and Girardi in Burnett v. Novartis Pharmaceuticals Corp., No. 12-3459 (D.Kan.); (5) G & K's statements on their website that they represent clients "nationwide" and in their magazine where they indicate that they have represented clients in Kansas; and (6) G & K's advertisement in Time magazine in December 2012 soliciting business in Kansas and elsewhere.

The defendants have challenged some of the evidence used by the Hutton firm in support of its arguments for the assertion of general jurisdiction over them. They note that in Hutton's

affidavit in support of the motion certain statements are made "upon information and belief." These statements include: (1) the defendants sent a letter to a number of clients in Kansas in the Clecbrex/Bextra, Durom Cup and Avandia cases; and (2) Girardi appeared personally in the District of Kansas as co-counsel for the plaintiffs in the In re Motor Fuel Temperature Sales Practice Litigation. The defendants argue that these matters cannot be considered because affidavits must be made on personal knowledge, and not "upon information and belief." The defendants further argue that the evidence offered by the Hutton law firm simply fails to demonstrate that they had a continuous and systematic presence in Kansas.

The court finds it unnecessary to determine whether the evidence offered by the Hutton law firm in Hutton's affidavit "upon information and belief" can be considered in determining a motion to dismiss under Rule 12(b)(2). The court notes that neither side has provided any case law on this issue. Some courts have determined that such matters cannot be considered. See United Tech. Corp. v. Mazer, 556 F.3d 1260, 1277 (11th Cir. 2009)(finding that when a court is determining a Rule (12)(b)(2) motion to dismiss that it should "consider[ ] 'only those portions of the [affidavit] that set forth specific factual declarations within the affiant's personal knowledge.'");

Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co., Ltd., 2008
WL 5190049, at *5 (S.D.Ohio Dec. 9, 2008)(addressing a Rule
12(b)(2) motion to dismiss and refusing to consider portions of
an affidavit based upon the belief of the affiant); Doe I v. Al
Maktoum, 2008 WL 4965169, at *5 (E.D.Ky. Nov. 18, 2008)(finding
an affidavit based upon news stories and web sites was not based
upon personal knowledge and was insufficient to defeat a motion
to dismiss under Rule 12(b)(2)). Other courts, however, have
found that such statements can be considered, even though the
weight given to them may be limited. See Raskin v. Compania de
Vapores Realma, S.P., 521 F.Supp. 337, 339 (S.D.N.Y.
1981)(affidavits based upon information and belief may be
considered by court on issue of personal jurisdiction but may
not be entitled to as much weight as contradictory affidavit
based on personal knowledge); see also Tingley Systems, Inc. v.
Bay State HMO Management, Inc., 833 F.Supp. 882, 884 (M.D.Fla.
1993)(court can consider affidavit based upon information and
belief in considering motion for transfer because statute
governing transfer motions does not expressly require that
affiant have personal knowledge).

The court is convinced that it makes no difference here.
In viewing the totality of the contacts between defendants and
the state of Kansas, the court find that continuous and

systematic contacts do not exist. The court notes that the defendants' contacts with Kansas fall far short of what the Supreme Court deemed insufficient to constitute general jurisdiction in Helicopteros or what the Tenth Circuit deemed inadequate in Benton and Shrader. The facts do not suggest that the defendants have a regular presence in Kansas. The factors noted by the Tenth Circuit certainly are not present here. There is no evidence that the defendants have a local office or agents in Kansas. There is also no evidence that the defendants come to Kansas "on a regular basis" to solicit business. In fact, there is no evidence that the defendants have ever come to Kansas for that purpose. In addition, there is no evidence that the defendants have directed any advertising specifically at Kansas. While the defendants have occasionally represented Kansas clients, they do not hold themselves out as "doing business in Kansas." Finally, the volume of business conducted in Kansas is not substantial. Again, the defendants have represented some clients from Kansas, but the number of cases appears relatively small. The Hutton firm has fallen far short of satisfying the difficult threshold of general jurisdiction.

B.

The court shall now turn to the issue of specific jurisdiction. The inquiry on specific jurisdiction is two-fold.

First, the court must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." World-Wide Volkswagen v. Woodson, 444 U.S. 280, 297 (1980). Within this inquiry the court must determine (1) whether the defendant purposefully directed its activities at residents of the forum, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); and (2) whether the plaintiff's claim arises out of or results from "actions by the defendant himself that create a substantial connection with the forum state," Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987). Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." Id. at 113. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. Id.

The Hutton firm suggests that the defendants have purposely directed activities regarding this case toward Kansas and Kansas residents by doing the following: (1) soliciting business from them by telephone and mail in the Celebrex/Bextra and Durom Cup

litigation; (2) maintaining a continuous relationship with them through letters, e-mails and faxes; (3) allowing them to perform substantial work on the Celebrx/Bextra and Durom Cup litigation in Kansas; (4) communicating with their Kansas clients; and (5) sending checks to the Hutton firm for distribution to the clients in the underlying litigation cases and sending checks to the Hutton firm for partial payment of the fee agreements. The Hutton firm further contends that its claims in this case arise out of the contacts by the defendants with Kansas.

The defendants contend that the case against each of them must be considered separately. They contend that the Hutton firm has failed to demonstrate that either of them had sufficient contacts with Kansas to justify the imposition of personal jurisdiction over either one of them. Relying heavily upon <u>Biederman v. Schnader, Harrison, Siegal & Lewis</u>, 765 F.Supp. 1057 (D.Kan. 1991), they contend the contacts noted by the Hutton law firm do not support personal jurisdiction over them. They argue that the evidence is lacking that they purposely availed themselves of the privilege of conducting activities in Kansas. They note initially that neither G & K nor Girardi ever visited Kansas as a result of their contacts with the Hutton firm. They further note that an attorney from another firm actually solicited the Hutton firm to transfer the

Celebrex/Bextra cases to G & K. They also point out that the record only shows a few phone calls, e-mails and letters from G & K to the Hutton firm. They further note that there was no agreement between the parties that payments had to be delivered to Kansas. In addition, defendant Girardi argues that the evidence against him is "particularly weak." He argues that there is no assertion that he was a party to the alleged oral agreements.

After a thorough review of the evidence and case law, the court is persuaded that the Hutton firm has made a prima facie showing that G & K has minimum contacts with Kansas to support the exercise of personal jurisdiction as long as such judicial review does not offend the traditional notions of fair play and substantial justice. The court, however, does not find that the Hutton firm has made a prima facie showing that Girardi had the requisite minimum contacts with Kansas.

In reaching these conclusions, the court notes G & K entered into an agreement with the Hutton firm to pay certain attorneys' fees if the Celebrex/Bextra cases and Durom Cup case were referred to it and a settlement was reached. The court finds that the Hutton firm's claims arose from G & K's contacts with Kansas. The claims were asserted when G & K failed to pay the attorneys' fees that had been earlier allegedly promised.

Thus, the court finds that one prong of the minimum contacts test is satisfied because the contacts that exist between the Hutton firm and G & K provide the basis for this lawsuit. <u>See Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, Okla.</u>, 245 F.Supp.2d 1248, 1256 (N.D.Ga. 2002).

In applying the other prong of the minimum contacts test, the court must determine whether G & K purposefully availed itself of the privilege of conducting activities within Kansas, such that it could reasonably anticipate being haled into a Kansas court. G & K has suggested that another attorney from another law firm initiated the solicitation with the Hutton firm. There is no dispute about that, but there is also no dispute that G & K quickly followed up with its own solicitation of the Hutton cases. G & K was aware that they were dealing with a Kansas law firm. They were further quickly aware that the cases to be referred involved a number of Kansas residents. The court is confident that the record shows that G & K solicited business from the Hutton firm. Such contact was unsolicited by the Hutton firm and, like the defendant in <u>Burger King</u>, G & K deliberately "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state." <u>Burger King, 471 U.S. at 473</u>. The solicitation of the Hutton firm by G & K is a significant factor

18

in determining minimum contacts with the state of Kansas.

The court recognizes that G & K did not travel to Kansas during any of period relevant to the Celebrex/Bextra and Durom Cup litigation. However, a defendant need not be physically present in the forum state to be subject to personal jurisdiction. AST Sports Sci., 514 F.3d at 1059. Rather, the court will look carefully at other evidence, including telephone or electronic communication, to establish personal jurisdiction when a defendant has not been physically present in the forum state because it serves as evidence that the defendant reached into the forum. Id. During the course of this relationship, G & K made phone calls to Kansas, and sent e-mails, letters and faxes to Kansas. "It is well established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1077 (10th Cir. 1995). However, "[i]n proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." Rambo v. Am. S. Ins., Co., 839 F.2d 1415, 1418 (10th Cir. 1988). "[T]he exercise of jurisdiction depends on the nature of those contacts." Id. (emphasis in original). "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff. . . . [and

generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." Id. at 1420 (citation omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King, 471 U.S. at 475 (citations omitted).

The court is persuaded that the communications between the Hutton firm and G & K show purposeful availment by G & K. The nature as well as the number of transmissions shows that a continuous relationship with the Hutton firm existed after the initial agreements.

In addition, G & K made payments to Kansas, both for the clients and for the Hutton firm. Paying funds into a forum state has been considered a relevant contact for the purposes of personal jurisdiction. Benton, 375 F.3d at 1076-77; see also Continental American Corp. v. Camera Controls Corp., 692 F.2d 1309, 1312 (10th Cir. 1982); Federal Deposit Ins. Corp. v. Culver, 640 F.Supp. 725, 727 (D.Kan. 1986). The court is not persuaded by G & K's argument that this factor should not be given any weight because the parties did not have an agreement that the payments had to be delivered to Kansas. Although there was no agreement on where the funds were to be delivered, there

was certainly an implicit agreement that the payments would be made to Kansas.  And, the subsequent events support that suggestion since G & K did in fact send the payments to Kansas.

The court does not believe that Biederman, the case relied upon by G & K, commands a different result.  There are several distinguishing facts in Biederman.  There, plaintiffs initially contacted the defendant law firm in Pennsylvania and sought their representation in a Pennsylvania case.  Later, Biederman traveled to Pennsylvania and sought the defendant law firm's representation in a North Carolina case.  All of the contract negotiations concerning fees took place in Philadelphia.  The defendant handled the North Carolina case with most of the work being performed in Philadelphia and North Carolina.  The defendant law firm, however, did made three visits to Kansas to handle certain aspects of the case.  Subsequently, plaintiffs filed an action in Kansas seeking a declaratory judgment that the defendant law firm had been paid for the legal services rendered in the North Carolina litigation. Judge O'Connor determined that the Kansas federal court did not have personal jurisdiction over the Pennsylvania law firm in the fee dispute. In reaching this conclusion, Judge O'Connor focused on the fact that plaintiffs' claims did not arise from the defendant's Kansas-related activities.  Biederman, 765 F.Supp. 2 1061.  He relied

upon <u>Austad Co. v. Pennie & Edmonds</u>, 823 F.2d 223 (8th Cir. 1987)

and determined that "defendant's brief visits to Kansas during

discovery, phone calls and letters to Kansas, and checks

received by defendant from a Kansas plaintiff are not sufficient

contacts to support an exercise by the court of personal

jurisdiction over the defendant." <u>Id</u>.

Here, differing from <u>Biederman</u>, the facts are clear that G

& K solicited business from a Kansas resident on several

occasions. As noted previously, the court is not persuaded that

the initial contact by the attorney from the other firm is

significant since G & K followed immediately with requests to

the Hutton firm to transfer its cases to G & K. This direct

solicitation of a Kansas resident significantly distinguishes

this case from Biederman, where the plaintiffs there not only

solicited a Pennsylvania law firm but traveled to Pennsylvania

to conduct the negotiations concerning the fees.

The court believes that other cases with circumstances

similar to this case, including some relied upon by the Hutton

firm, support this court's finding that G & K had minimum

contacts with Kansas. <u>See</u>, <u>e.g.</u>, <u>Remick v. Manfredy</u>, 238 F.3d

248 (3rd Cir. 2001); <u>Joye v. Heuer</u>, 66 F.3d 316 (4th Cir.

1995)(table case); <u>English & Smith v. Metzger</u>, 901 F.2d 36 (4th

Cir. 1990); <u>Paul, Hastings, Janofsky & Walker, LLP, v. City of</u>

<u>Tulsa</u>, 245 F.Supp.2d 1248 (N.D.Ga. 2002); <u>Strobehn v. Mason</u>, 397 S.W.3d 487 (Mo.App. 2013)(table case).

The court did not reach the same conclusions concerning Girardi. His individual contacts with Kansas were very limited. The only contacts noted by Hutton concerning Girardi are as follows: (1) two letters sent to Hutton in Kansas; (2) "numerous telephone conversations" regarding the Zimmer cases; and (3) Girardi agreeing on the referral of the Celebrex/Bextra cases and the Zimmer Durom Cup case. There is no specific allegation, however, that Girardi was a party to the alleged agreements, as opposed to negotiating on behalf of G & K. These contacts are simply insufficient to support the conclusion that Girardi purposely availed himself of the privilege of conducting business in Kansas and submitted himself to the protection of Kansas's laws. Accordingly, the court shall grant defendants' motion in part and dismiss Girardi for lack of personal jurisdiction.

"If the defendant has minimum contacts with the forum state, 'we must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice.'" <u>Emp'rs Mut. Cas. Co.</u>, 618 F.3d at 1161(quoting <u>AST Sports Sci.</u>, 514 F.3d at 1061). "[M]inimum requirements inherent in the concept of fair play and substantial justice may defeat

the reasonableness even if the defendant has purposefully engaged in forum activities." Burger King, 471 U.S. at 477-78. At this point in the analysis, the defendant bears the burden of proving other considerations would render jurisdiction unreasonable. Emp'rs Mut. Cas. Co., 618 F.3d at 1161. This reasonableness analysis requires weighing the following five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient solution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Trujillo v. Williams, 465 F.3d 1210, 1221 (10th Cir. 2006)(quoting Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1279-80 (10th Cir. 2005)).

Having reviewed all of the factors and arguments of the parties, the court is not persuaded that G & K has shown that the exercise of jurisdiction here would offend the traditional notions of fair play and substantial burden. This is a close question, but the court is not convinced that G & K has shown that jurisdiction here would be unreasonable. In considering the first factor, the court essentially believes that this factor is neutral. The claims in this case arise from the

litigation that occurred in California. G & K has shown that it has no local office or agents in Kansas. Moreover, there is no indication that G & K comes to Kansas on a regular basis. However, G & K did solicit this business from a Kansas firm and the court is not convinced that at this time that G & K has shown that this action would be a substantial burden on it. The second factor in the reasonableness inquiry favors the Hutton firm. States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors. <u>Burger King</u>, 471 U.S. at 483. The third factor considers whether the Hutton firm may receive convenient and effective relief in another forum. <u>OMI Holdings, Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1097 (10th Cir. 1998). This factor may weigh heavily in cases where the plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit. <u>See</u> <u>Pacific Atlantic Trading Co. v. M/V Main Express</u>, 758 F.2d 1325, 1331 (9th Cir. 1985). The Hutton firm has provided no facts for the court to find this danger present in this case. The factor is neutral. The fourth factor in our reasonableness inquiry examines whether the forum state is the most efficient place to litigate the dispute. Key to this

25

inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. OMI Holdings, Inc., 149 F.3d at 1097. At this point, the court is not persuaded that G & K has shown that this court would not be as efficient as the Central District of California. The question of which jurisdiction's law applies is yet to be determined. Finally, we consider the interests of the several states in addition to the forum state, in advancing fundamental substantive social policies. The court has no reason to believe that either state's fundamental substantive social policies will be adversely affected by this case, wherever it may be tried. Accordingly, the court finds that this factor is neutral. In sum, the court does not find that the exercise of of jurisdiction would offend the traditional notions of fair play and substantial justice.

Accordingly, the court finds that the Hutton firm has made a threshold showing that G & K has sufficient ties with Kansas as to permit the constitutional exercise of personal jurisdiction over it. The court also finds, however, that the Hutton firm has not made a threshold showing that Girardi has sufficient ties with Kansas as to permit the constitutional exercise of personal jurisdiction over him. The court shall

therefore grant the defendants' motion in part and deny it part.

                                    III.

As an alternative, the defendants have asserted that the court should transfer venue pursuant to 28 U.S.C. § 1631 and 28 U.S.C. § 1404(a). The defendants contend initially that this case should be transferred to the United States District Court for the Central District of California under § 1631 because jurisdiction is lacking over both of them. They further contend that if the court disagrees with them on the issue of personal jurisdiction then transfer should be made under § 1404(a) for the convenience of the parties.

The court is not persuaded that transfer should be made under either statute. The court recognizes that it lacks personal jurisdiction over one of the defendants. The court further recognizes that plaintiff may wish to proceed against both of these defendants in one forum. If so, plaintiff can seek to transfer this case. At this time, the court does not find G & K has shown that it would be substantially more convenient to litigate in California. There are key witnesses located in both Kansas and California. The location of this litigation will be inconvenient for one party or the other. Much of the information concerning the relevant factors is not entirely known at this time. Thus, the court is not persuaded

that the Hutton firm's choice of forum should be disturbed. However, the court would be willing to consider another motion at a later time when the parties have a better idea concerning some of the relevant factors.

IT IS THEREFORE ORDERED that defendants' motion to dismiss or, alternatively, to transfer (Doc. # 5) be hereby granted in part and denied in part. The court shall dismiss defendant Thomas V. Girardi for lack of personal jurisdiction. The remainder of the motion shall be denied.

**IT IS SO ORDERED.**

Dated this 6th day of January, 2014, at Topeka, Kansas.


 s/Richard D. Rogers   
Richard D. Rogers
United States District Judge